# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RONALD G. GODFREY** | **CIV. ACTION NO. 04-2052** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **AAB AMUSEMENT COMPANY, INC., ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

# RULING

Plaintiff Ronald G. Godfrey ("Godfrey") brought this lawsuit against AAB Amusement Company, Inc. ("AAB") and Brushy Development Corp. ("Brushy"), his former employers; Bryan R. Ashley ("Ashley"), the president of both entities; and Colony Insurance Company ("Colony")[1], the insurer for AAB and Brushy. In connection with his termination, Godfrey alleges that AAB, Brushy, and Ashley (collectively, "the AAB Defendants") breached a contract of employment with him and violated the Employee Polygraph Protection Act of 1988 ("the EPPA"), 29 U.S.C. §§ 2001, *et seq.*, 42 U.S.C. § 1983, and state laws against defamation, invasion of privacy, and wrongful termination.

Colony has filed a Motion for Summary Judgment [Doc. No. 24] seeking a declaratory judgment that its Commercial General Liability Policies ("the Policies") issued to AAB and Brushy do not provide coverage for the claims asserted or the damages sought by Godfrey and that Colony is not obligated to defend the AAB Defendants. The AAB Defendants have filed a memorandum in opposition to Colony's Motion for Summary Judgment. For the following

---

[1]Godfrey named Colony Agency Services, Inc. as Defendant; however, the proper entity is Colony Insurance Company.

reasons, Colony's Motion for Summary Judgment is GRANTED.

## I.   THE POLICIES[2]

Colony issued the Policies to AAB and Brushy during Godfrey's employment with these entities.[3]   The Policies provide for two types of coverage applicable to this lawsuit: (1) Bodily Injury and Property Damage Liability and (2) Personal and Advertising Injury Liability.

The Bodily Injury and Property Damage Liability provision states as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Bodily injury is defined as "bodily injury, sickness or death sustained by a person, including death resulting from any of these at any time."

The Personal and Advertising Injury Liability provision states as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

Personal and advertising injury is defined as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

---

[2]The Court has issued a Ruling this same date on cross-motions for summary judgment filed by Godfrey and the AAB Defendants.  The Court incorporates by reference the facts and procedural history from that Ruling, supplemented by additional facts and history pertinent only to Colony's Motion for Summary Judgment.

[3]Although AAB and Brushy were issued separate policies, the provisions of the policies analyzed in this Ruling are identical and, thus, are considered jointly.

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

Under the terms of the Policies, Colony agrees to pay those sums that AAB and Brushy become legally obligated to pay as damages because of "bodily injury," "property damage," and "personal and advertising injury" unless there is an exclusion or endorsement which excludes coverage for claims.

The Policies contain an "Employment-Related Practices Exclusion" endorsement which excludes coverage for "bodily injury" or "personal and advertising injury" and provides as follows:

This insurance does not apply to:

"Bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment;

> (c) Employment-related practices, policies, acts or omission, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person. . .
>
> This exclusion applies:
>
> (1) Whether the insured may be liable as an employer or in any other capacity; and
>
> (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Insurance Coverage

An insurance policy is a contract between the parties and should be construed employing the general rules on the interpretation of contracts set forth in the Louisiana Civil Code. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94); 634 So.2d 1180, 1183; *American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 262 (5th Cir. 2003). The Court's responsibility in interpreting insurance contracts is to determine the parties' common intent. La. Civ. Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, " and the contract will be enforced as written. La. Civ. Code art. 2046; *see also Magnon v. Collins*, 98-2822 (La. 7/7/99); 739 So.2d 191, 197.

While the insured bears the burden of proving that a claim falls within the policy's terms, the insurer bears the burden of proving the applicability of an exclusionary clause within the

5

policy. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So.2d 119, 124. Insurance companies "have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Edwards v. Daugherty*, 03-2103 (La. 10/1/04); 883 So.2d 932, 947.

When considering an insurer's duty to defend, the Court must "examine the well-pleaded allegations of the plaintiff's petition to determine whether the plaintiff's allegations 'unambiguously exclude[ ]' coverage." *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05); 907 So.2d 37, 52. "Unless unambiguous exclusion of all of the plaintiff's claims is shown, the duty to defend arises." *Id.* "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside of the policy's coverage." *Coleman v. School Bd. of Richland Par.*, 418 F.3d 511, 523 (5th Cir. 2005) (internal quotation marks and citations omitted).

### 1. Allegations Contained in Petition

Godfrey alleges that he was "discharged" or "constructively discharged" by Defendant Ashley because he refused to consent to a polygraph examination to be conducted by a deputy at the Madison Parish Sheriff's Office. Petition, ¶¶ 4-5. Godfrey further alleges that Ashley acted "'under color of state law' as . . . Godfrey was of the reasonable belief that the polygraph was of a criminal connotation rather than of an employment connotation and that . . . Ashley was authorized to represent the . . . Sheriff's Office." Petition, ¶ 5.

After the alleged adverse employment action was taken against him, Godfrey alleges that Ashley "as owner/president of . . . AAB and Brushy, withheld certain amounts . . . of wages, bonuses and commissions that were due and owing" and that he should be "subjected to the

6

penalty provisions of Louisiana employment law for the willful refusal to pay due and owing wages." Petition, ¶ 6.

Additionally, Godfrey alleges that Ashley published "an untrue public advertisement [in a local newspaper] erroneously addressing . . . Godfrey's criminal status in the context of his employment" and that this publication "caused . . . extreme and extensive damage to . . . Godfrey's reputation, together with embarrassment, humiliation, mental anguish and emotional distress." Petition, ¶ 7.

Finally, Godfrey contends that the "conduct of defendants Ashley, AAB and Brushy were willful, wanton or, in the alternative, grossly negligent and reckless and were the direct cause of . . . Godfrey's damage." Petition, ¶ 8. Godfrey lists his causes of action as breach of an employment contract; wrongful termination in violation of public policy; violation of the EPPA; retaliation based on his refusal to waive his rights under the EPPA; violation of § 1983; wrongfully withholding wages, commissions, and bonuses; defamation; invasion of privacy; and "[o]ther acts of liability." Petition, ¶ 8.

With regard to his claim against Colony, Godfrey states that Colony's "contract of insurance has, within its scope, relevance to claims made against the insured(s) that are of an employment nature." Petition, ¶ 9.

### 2. Duty to Defend

The Court now considers whether any of Godfrey's allegations are sufficient to trigger Colony's duty to defend. Because Colony's Motion for Summary Judgment does not raise the issue of whether AAB and Brushy established the requirements for coverage, the Court assumes the requirements were met and focuses its analysis on the exclusions in the Policies.

7

Colony's Employment Related Practices Exclusion to the Policies unambiguously provides that Colony has no duty to defend against claims of "bodily injury" or "personal and advertising injury" to "[a] person arising out of any . . . [t]ermination of that person's employment . . . [or] . . . [e]mployment-related practices, policies, acts or omission, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person." In this case, Godfrey's allegations, as detailed, all arise out of the termination of his employment and/or employment-related practices with the possible exception of his § 1983 claim. Godfrey clearly believes that the EPPA was violated because Ashley, acting on behalf of AAB and Brushy, conditioned his continued employment on a polygraph examination and then terminated him when he refused to take the polygraph. Godfrey also believes his termination was in violation of public policy. Likewise, any breach of contract claim is directly related to the AAB Defendants' failure to pay him certain wages and other amounts allegedly due upon his termination.

With regard to Godfrey's defamation and false light invasion of privacy claims, the Petition clearly states that the advertisement published by Ashley "erroneously address[ed] . . . Godfrey's criminal status **in the context of his employment**." (emphasis added). The AAB Defendants have argued that the alleged defamation and invasion of privacy occurred several months after Godfrey's termination and concerned his criminal conviction, not his employment. The length of time between termination and the alleged defamation or invasion of privacy is not determinative. Rather, the issue is whether the statement arose out of Godfrey's termination or out of any "[e]mployment-related practices, policies, acts or omission, such as . . . defamation." Godfrey is alleged to have stolen the $38,000 missing from Brushy's ATM, and the private and

8

criminal investigation into that theft ultimately resulted in his termination[4] when he refused to take a polygraph examination. While the advertisements in the local newspaper were placed after Godfrey pled guilty to a lesser crime, the content is inextricably intertwined with the circumstances of Godfrey's termination and acts occurring during his employment. Thus, the Court finds that these claims are also excluded from coverage under the Employment Related Practices Exclusion.

Godfrey has one remaining claim against the AAB Defendants which must be examined more closely. As part of his allegations under 42 U.S.C. § 1983, Godfrey states that Ashley acted "'under color of state law'" and Godfrey reasonably believed that the requested polygraph examination "was of a criminal connotation rather than of an employment connotation and that . . . Ashley was authorized to represent the . . . Sheriff's Office." Petition, ¶ 5. The AAB Defendants argue that because Godfrey alleges Ashley was "acting under 'color of law' as opposed to in his capacity as plaintiff's employer, the 'employment related practices exclusion' does not apply."

The Court disagrees. Godfrey alleges that he "believed" the polygraph examination was criminal and not employment-related at the time Ashley allegedly requested that he take the polygraph. However, under § 1983, a plaintiff must prove both (1) that he was deprived of an existing federal right and (2) that the deprivation occurred under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Even if Ashley acted under color of state law, Godfrey would

---

[4]As noted in the Court's Ruling on the cross-motions for summary judgment filed by Godfrey and the AAB Defendants, it is disputed between the parties whether Godfrey voluntarily terminated his employment or whether he was constructively discharged by being placed on unpaid indefinite suspension.

need to show that his rights were violated under the EPPA, an Act which restricts the use of polygraph examinations in the employment context, not the criminal context. Accordingly, Godfrey's § 1983 claim is also excluded from coverage.

Under the allegations of the Petition, the Court determines that Colony's Policies do not provide coverage to the AAB Defendants for the claims asserted by Godfrey, and Colony is entitled to judgment as a matter of law.[5]

### 3. Duty to Indemnify

Because the Court has determined that Colony has no duty to defend the AAB Defendants, Colony also has no duty to indemnify the AAB Defendants should damages be awarded against them. *See Lamar Adver. Co. v. Continental Cas. Co.*, 396 F.3d 654, 665-66 (5th Cir. 2005).

## III. CONCLUSION

For the foregoing reasons, Colony's Motion for Summary Judgment [Doc. No. 24] is GRANTED.

MONROE, LOUISIANA, this 6th day of October, 2005.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[5]Having found that coverage of all Godfrey's claims is excluded under the Employment Related Practices Exclusion, the Court need not reach Colony's additional arguments (1) that employment contracts are excluded from coverage relating to contractual claims and (2) that certain other claims are excluded from coverage as intended or expected acts.